United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 08, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-10079** |
| **LUIS DANIEL GUTIERREZ** | § | |
| **and** | § | |
| **VIOLA S. GUTIERREZ,** | § | |
| | § | |
| **Debtors.** | § | |
| | § | |
| | § | **CHAPTER 13** |

<u>**MEMORANDUM OPINION**</u>

The term "surrender" is not defined in the Bankruptcy Code, which begs the question, how does a debtor in bankruptcy surrender personal property to a creditor that the debtor no longer possesses?  Does surrender require actual delivery of the property?  The Estate of Billy R. Algoe's primary objection is that debtors' proposed plan fraudulently states that business equipment was surrendered but never physically delivered to the Estate of Billy R. Algoe.[1]  Separately, the Estate of Billy R. Algoe has alleged misconduct by the Chapter 13 trustee and is seeking her removal.  The Estate of Billy R. Algoe also seeks sanctions against debtors' counsel.

The Court conducted several evidentiary hearings beginning on June 10, 2021 and concluding on August 12, 2021.  At the conclusion of the hearings, the Court took all matters under advisement.  For the reasons stated herein, the "Objection of the Estate of Billy Algoe to Strike Proposed Chapter 13 Uniform Plan Dated March 5, 2021[2] and Objection to Valuation of Collateral and Objection to Confirmation of Chapter 13 Uniform Plan Based on Misconduct of Chapter 13

---

[1] At the June 10, 2021 hearing, the Court framed the issues raised by the Estate of Billy R. Algoe to be "whether or not the plan properly surrenders the collateral under section seven of the plan and whether or not the term surrender requires actual delivery of the collateral."  Counsel for the Estate of Billy R. Algoe confirmed that those were indeed the issues before the Court.

[2] The Court notes that the debtors' amended plan was actually dated March 3, 2021.  ECF No. 174.

Trustee Cindy Boudloche and Requesting Chapter 13 Trustee's Removal from Cause and Replacement with an Unbiased Interested Trustee Due to Breach of Fiduciary Duty of Chapter 13 Trustee in Failing To Perserve [Sic] Bankruptcy Assets for Legitimate Bankruptcy Creditors"[3] filed by the Estate of Billy Algoe on June 24, 2021: (a) as it pertains to the Chapter 13 Uniform Plan and Motion for Valuation of Collateral dated March 5, 2021[4] is moot; (b) as it pertains to the request for the removal of Cindy Boudloche as chapter 13 trustee, the Court finds no cause to grant such relief pursuant to 11 U.S.C. § 324.  Accordingly, such request is denied.  The Estate of Billy Algoe's objection to confirmation[5] of Luis and Viola Gutierrez Chapter13 plan of reorganization dated July 23, 2021[6] is overruled.  The "Motion to Dismiss 6th Amended Uniform Plan and Motion for Valuation of Collateral Dated July 23, 2021, ECF No. 243, and Motion for Sanctions"[7] filed by the Estate of Billy Algoe on July 27, 2021 is denied.  The Chapter 13 Uniform Plan and Motion for Valuation of Collateral dated July 23, 2021[8] filed by Luis Daniel Gutierrez and Viola S. Gutierrez is confirmed.   A separate order shall be entered simultaneously herewith.

## I.   BACKGROUND

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, incorporating Federal Rules of Civil Procedure 52 and 9014. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.   This Memorandum Opinion

---

[3] ECF No. 220.
[4] ECF No. 174.
[5] ECF No. 250.
[6] ECF No. 220.
[7] ECF No. 246.
[8] ECF No. 243.

supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion controls.

1. Luis Gutierrez ("*Debtor*") operated South Shore Automotive on commercial property ("*Property*") leased from the late Billy R. Algoe.[9]

2. On December 10, 2018, Billy R. Algoe constructively evicted Debtor from the Property by changing the locks.[10]

3. On February 27, 2020, Debtor and Viola Gutierrez ("*Co-Debtor*" and together with Luis Gutierrez, "*Debtors*") filed their initial petition under chapter 13 of title 11 of the Code along with their Chapter 13 Uniform Plan and Motion for Valuation of Collateral.[11]

4. Debtors are of modest income, making just below the median income for a household of two in Texas.[12]

5. The applicable commitment period in this chapter 13 proceeding is 3 years.[13]

6. On May 4, 2020, Lone Star National Bank ("*Lone Star*") filed a motion for relief from stay ("*Motion for Relief*") seeking possession and foreclosure of collateral by private sale pertaining to a Note and Security Agreement ("*Note*") executed by Debtor pre-petition, having a balance of $59,690.92.[14]  The Note was the subject of a state court lawsuit initiated by Lone Star in Cause No. 2019-DCL-02944 in the 445th Judicial District Court of Cameron County, Texas ("*State Court Lawsuit*"), where Lone Star obtained a partial summary judgment ruling granting it a security interest in all collateral listed in the Note and a superior lien against the collateral, superior to that of the landlord Billy R. Algoe.[15]

7. On May 12, 2020, the Estate of Billy R. Algoe ("*Algoe*") filed a secured proof of claim ("*Claim*") in the amount of $53,340.[16]  The Claim is purportedly secured by a pre-petition judgment in an eviction case 2019-EFD-0043 in the Justice of the Peace Court, Precinct 1, Place 1, Cameron County, Texas ("*Eviction Judgment*").[17]

8. On May 14, 2020, the Court held a hearing on confirmation of Debtors' February 27, 2020 Plan.  Plan confirmation was continued to June 5, 2020.[18]

---

[9] June 10, 2021 Hearing Debtors' Ex. C.

[10] ECF No. 234-1 at 6; June 10, 2021 Hearing at 10:51:46–10:51:55; 10:56:46–10:57:46.

[11] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

[12] *Compare* ECF No. 5 at 3, ¶ 15b (Debtors' yearly combined income is $61,923.24) *with* ECF No. 5 at 3, ¶ 16c (Median yearly family income for Texas household consisting of two people is $65,708).

[13] ECF No. 5.

[14] ECF No. 29 at 3, ¶ 3 (citing ECF No. 29-4).

[15] ECF Nos. 29-5, 29-6.

[16] Claim No. 10.

[17] *Id.*

[18] ECF No. 32.

9. On June 1, 2020, the Court entered an Agreed Order between Debtors and Lone Star granting the Motion for Relief.[19]

10. On June 5, 2020, the Court held a hearing on confirmation of Debtors' February 27, 2020 Plan. The parties agreed to continue confirmation to July 9, 2020.[20]

11. On June 8, 2020, Cindy Boudloche, the chapter 13 trustee ("*Trustee*"), filed a motion to dismiss Debtors' bankruptcy case ("*Trustee's Motion to Dismiss*").[21]

12. On July 9, 2020, the Court held a hearing on confirmation of Debtors' February 27, 2020 Plan. Confirmation was denied. Dismissal was continued to August 6, 2020.[22]

13. On August 6, 2020, the Court held a hearing on Trustee's Motion to Dismiss. The hearing was continued to September 10, 2020.[23]

14. On August 12, 2020, Algoe filed a motion to declare the auction held by Lone Star null and void ("*Motion to Declare Auction Void*").[24]

15. On September 4, 2020, Lone Star filed a response to the Motion to Declare Auction Void.[25]

16. On September 9, 2020, Debtors filed their first amended chapter 13 plan.[26]

17. On September 10, 2020, Algoe filed its objection to confirmation of the September 9, 2020 Plan.[27] Dismissal was continued to October 8, 2020.[28]

18. On October 1, 2020, Debtors filed a response to Algoe's September 10, 2020 objection.[29]

19. On October 6, 2020, Debtors filed an objection to Algoe's Claim ("*Claim Objection*").[30]

20. On October 8, 2020, dismissal and confirmation were continued to November 12, 2020.[31] Additionally, after a hearing, the Court denied the Motion to Declare Auction Void.[32]

---

[19] ECF No. 40.
[20] ECF No. 42.
[21] ECF No. 45.
[22] ECF No. 52.
[23] ECF No. 60.
[24] ECF No. 64.
[25] ECF No. 69.
[26] ECF No. 72.
[27] ECF No. 77.
[28] ECF No. 75.
[29] ECF No. 86.
[30] ECF No. 91.
[31] ECF No. 96.
[32] ECF No. 98.

21. On November 11, 2020, the Court held a hearing.  At that hearing, confirmation and dismissal were continued to December 10, 2020.[33]

22. On December 10, 2020, confirmation and dismissal were continued to January 7, 2021.[34] Algoe also filed its answer to the Claim Objection.[35]

23. On December 17, 2020, the Court held an evidentiary hearing and overruled Debtors' Claim Objection based on lack of proper notice to Algoe.[36]

24. On January 6, 2021, Debtors filed their second amended chapter 13 plan.[37]

25. On March 3, 2021, Debtors filed their third amended chapter 13 plan.[38]

26. On April 6, 2021, Debtors filed their fourth amended chapter 13 plan.[39]

27. On April 22, 2021, the Chapter 13 Trustee recommended confirmation of Debtors' April 6, 2021 Plan.[40]

28. On April 25, 2021, Algoe filed a pleading self-styled as "Second Amended Objection of the Estate of Billy Algoe to Strike Debtor's [sic] Fourth Amended Plan of Reorganization Dated April 6, 2021 at ECF No. 191 filed by the Estate of Billy Algoe on April 25, 2021"("*First Objection*").[41]

29. On June 24, 2021, Algoe filed a separate pleading self-styled as "Objection of the Estate of Billy Algoe to Strike Proposed Chapter 13 Uniform Plan Dated March 5, 2021 and Objection to Valuation of Collateral and Objection to Confirmation of Chapter 13 Uniform Plan Based on Misconduct of Chapter 13 Trustee Cindy Boudloche and Requesting Chapter 13 Trustee's Removal from [sic] Cause and Replacement with an Unbiased Interested Trustee Due to Breach of Fiduciary Duty of Chapter 13 Trustee in Failing to Preserve Bankruptcy Assets for Legitimate Bankruptcy Creditors" ("*Second Objection*").[42]

30. On June 30, 2021, the Trustee filed her response to the Second Objection.[43]

31. On July 6, 2021, Algoe filed its reply to the Trustee's response.[44]

---

[33] ECF Nos. 118–119.
[34] ECF No. 137.
[35] ECF No. 142.
[36] December 17, 2020 Min. Entry.
[37] ECF No. 161.
[38] ECF No. 174.
[39] ECF No. 191.
[40] ECF No. 199.
[41] ECF No. 203.
[42] ECF No. 220.
[43] ECF No. 222.
[44] ECF No. 226.

32. On July 14, 2021, Lone Star filed its response to the Second Objection.[45]

33. On July 23, 2021, the Trustee filed her "Chapter 13 Trustee's Brief of Facts and Authority in Support of Confirmation of the Plan and Dismissal of Pending Pleadings by the Estate of Billy R. Algoe to Remove the Trustee".[46]  The same day, Debtors filed an amended plan, erroneously labeling the plan as the sixth amended plan ("*July 23, 2021 Plan*" or "*Plan*").[47] Debtors also filed their brief in opposition to the Second Objection.[48]

34. On July 26, 2021, the Trustee recommended confirmation of Debtors' July 23, 2021 Plan.[49]

35. On July 27, 2021, Algoe filed its "Motion to Dismiss 6th Amended Uniform Plan and Motion for Valuation of Collateral Dated July 23, ECF No. 243 and Motion for Sanctions" ("*Motion to Dismiss*").[50]

36. On July 29, 2021, Algoe filed its "Post Hearing Legal Memorandum of the Estate of Billy Algoe in Support [sic] Trustee's Removal and Clawback of $28,500 Auction in Proceed [sic] of Rhino Liner and GMC Truck" ("*Post Hearing Brief*").[51]

37. On August 5, 2021, Algoe filed its "Objection of the Estate of Billy Algoe to Debtor's [sic] Sixth Amended Plan of Reorganization Dated July 23, 2021 at ECF No. 243" ("*Third Objection*").[52]

38. On August 10, 2021, Debtors filed their response to the Motion to Dismiss.[53]

## II.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

### A. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[54]  This court determines that pursuant to 28

---

[45] ECF No. 233.
[46] ECF No. 241.
[47] ECF No. 243.
[48] ECF No. 242.
[49] ECF No. 244.
[50] ECF No. 246.
[51] ECF No. 248.
[52] ECF No. 250.
[53] ECF No. 251.
[54] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

U.S.C. §§ 157(b)(2)(A) and (L), this proceeding contains core matters as it primarily involves matters pertaining to the administration of the estate and confirmation of Debtors' plan of reorganization.[55]  This matter is also core under the general "catch-all" language because this matter is the type of proceeding that can only arise in the context of a bankruptcy case.[56]  There is no state law equivalent for confirmation of a chapter 13 plan of reorganization.

This Court may only hear a case in which venue is proper.[57]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtors' chapter 13 case is presently pending in this Court; therefore, venue is proper.

## B.  Constitutional Authority to Enter a Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to enter a final order.[58]  The present dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (L) because it concerns administration of the estate and confirmation of Debtors' chapter 13 plan.  Plan confirmation "alters the status quo and fixes the parties' rights and obligations[,]" moving the bankruptcy case forward.[59]  Thus, an order confirming a plan finally disposes of a discrete issue within the larger bankruptcy case, constituting a final order.[60]

This Court has the constitutional authority to enter a final order here because this is a core proceeding and there is no *Stern* issue.  Interpreted narrowly, *Stern* is limited to one specific core

---

[55] *See* 11 U.S.C. § 157(b)(1), (b)(2)(A), (L).

[56] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

[57] 28 U.S.C. § 1408.

[58] *Stern v. Marshall*, 564 U.S. 462 (2011).  *But see Wellness Int'l Network v. Sharif*, 575 U.S. 665, 668–710 (2015) (holding that parties may consent to jurisdiction on non-core matters).

[59] *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015).

[60] *See id.* (citing *Howard Delivery Serv., Inc. Zurich Am. Ins. Co.*, 547 U.S. 651, 657, n.3 (2006)).

proceeding, § 157(b)(2)(C), stripping bankruptcy courts of constitutional authority to enter a final order where a state law counterclaim is not resolved in the process of ruling on a creditor's proof of claim.[61]   Neither § 157(b)(2)(C) nor state law claims are implicated in this proceeding, so this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[62]   Alternatively, even if *Stern* applies to all of the categories of core proceedings,[63] this Court still concludes that *Stern* does not prohibit this Court from entering a final order in this dispute.   In *Stern,* the debtor filed a counterclaim based *solely* on state law; whereas, here, confirmation of a chapter 13 plan of reorganization, 11 U.S.C. § 1325, is based *exclusively* on express provisions of the Bankruptcy Code and judicially-created bankruptcy law interpreting those provisions.   This Court is therefore constitutionally authorized to enter a final order or judgment.

Finally, this Court has constitutional authority to enter a final order because Debtors and Algoe have consented, impliedly if not explicitly, to adjudication of this dispute by this Court.[64] The parties have engaged in extensive motion practice before this Court and neither party has ever objected to this Court's constitutional authority to enter a final order or judgment.   These

---

[61] 564 U.S. at 503.

[62] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547–48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis)*, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . . We decline to extend *Stern's* limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503).

[63] *See First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern's* 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . . .").

[64] *Sharif*, 575 U.S. at 683 ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

circumstances unquestionably constitute implied consent.  Thus, this Court wields the constitutional authority to enter a final order here.

## III.  ANALYSIS

Confirmation of Debtors' chapter 13 plan of reorganization has been hotly contested by Algoe.  On June 10, 2021, this Court held an evidentiary hearing on confirmation of Debtors' April 6, 2021 Plan and Algoe's First Objection.[65]  At the conclusion of the hearing, the matter was continued to July 8, 2021.[66]  However, before July 8, 2021, Algoe filed its Second Objection.[67]  At the July 8, 2021 hearing, the Court entertained arguments solely as to confirmation of Debtors' April 6, 2021 Plan and Algoe's First Objection.  At the conclusion of the hearing, the matter was again continued to July 27, 2021.  Because Algoe's Second Objection pertained to confirmation of Debtors' April 6, 2021 Plan, this Court issued an order on July 14, 2021 setting the matter for hearing on July 27, 2021, the same day as the continued confirmation hearing.[68]

Four days before the continued hearing, Debtors filed their July 23, 2021 Plan.[69]  At the July 27, 2021 hearing, Algoe orally objected to the July 23, 2021 Plan and requested leave of court to file a formal objection, indicating that a motion for sanctions against Debtors' counsel would also be filed.[70]  The Court granted Algoe's request and reset confirmation for August 12, 2021.[71]  However, the parties agreed to move forward on July 27, 2021 with argument and evidence regarding Algoe's request to remove the Trustee for cause.[72]

---

[65] June 10, 2021 Min. Entry.
[66] *Id.*
[67] ECF No. 220.
[68] ECF No. 232.
[69] ECF No. 243.
[70] July 27, 2021 Min. Entry.
[71] *Id.*
[72] *Id.*

On July 27, 2021, Algoe filed its Motion to Dismiss, requesting sanctions therein.  A hearing was held on August 12, 2021 for confirmation of Debtors' July 23, 2021 Plan and Algoe's Motion to Dismiss.[73]  Because the hearing on confirmation of Debtors' April 6, 2021 Plan and Algoe's First Objection did not conclude before the parties started filing additional objections, motions, and plans, this Court will discuss each filing in turn.

## A.  Debtors' April 6, 2021 Uniform Plan and Motion for Valuation of Collateral

In their April 6, 2021 Plan, Debtors proposed to surrender "Business Equipment" to Algoe upon confirmation of the plan.[74]  Business Equipment was not defined in the plan.[75]  The April 6, 2021 Plan also provided that, "[t]he rights of a secured creditor to a deficiency claim will be determined (i) in accordance with the creditor's allowed unsecured claim in any timely filed proof of claim; or (ii) by separate Court order."[76]

### 1.  Algoe's First Objection to Debtors' April 6, 2021 Plan

Algoe objected to its treatment under the plan, arguing that the April 6, 2021 Plan: (1) lists a claim for Algoe secured by business equipment, but does not state the amount or how said security interest in the business equipment was perfected by Algoe; and (2) fraudulently states that the $53,340 in business equipment securing Algoe's claim was surrendered, an action that never took place.[77]  Algoe asserted that the $53,340 awarded by the Eviction Judgment "remains a deficiency Judgment which was secured by the Debtor's [sic] Personal Property items some of which still are in the custody of Lone Star National Bank and said deficiency Judgment is non-dischargeable under the Bankruptcy code."[78]

---

[73] August 12, 2021 Min. Entry.
[74] ECF No. 191 at 3, ¶ 7.
[75] *Id.*
[76] *Id.* ¶ 7(D).
[77] ECF No. 203 at 1, ¶ 1–2.
[78] *Id.* at 2, ¶ 3.

Accordingly, because Debtors' April 6, 2021 Plan was again amended on July 23, 2021, and Algoe filed an objection to that July 23, 2021 Plan, Algoe's First Objection[79] is overruled as moot.

### 2. Algoe's Second Objection to Debtors' March 3, 2021 Plan and Debtors' April 6, 2021 Plan

Before this Court concluded the hearing on confirmation of Debtors' April 6, 2021 Plan and without requesting leave of court to amend its objection, Algoe filed its Second Objection. Algoe erroneously labeled its Second Objection as an objection to Debtors' plan dated March 5, 2021.[80]  When Algoe filed the objection on June 24, 2021, the March 3, 2021 Plan was no longer before the Court because Debtors had already filed their April 6, 2021 Plan and the plan was actually filed March 3, not March 5.  Thereafter, Debtors filed their July 23, 2021 Plan.

Accordingly, to the extent that Algoe's Second Objection[81] seeks to strike Debtors' March 3, 2021 Plan or April 6, 2021 Plan, the objection is overruled as moot.  Nevertheless, this Court considers Algoe's Second Objection an objection to Debtors' July 23, 2021 Plan.  The Second Objection is discussed below in Part III(B)(2).

### B.  Debtors' July 23, 2021 Uniform Plan and Motion for Valuation of Collateral

Debtors' July 23, 2021 Plan made no changes to the proposed treatment of Algoe's claim in the April 6, 2021 Plan.[82]  As stated by Debtors' counsel at the July 27, 2021 hearing and as reflected in the July 23, 2021 Plan, the Plan was amended solely to provide for fees, expenses, or

---

[79] ECF No. 203.
[80] ECF No. 220.
[81] *Id.*
[82] *Compare* ECF No. 191 at 3, ¶ 7 *with* ECF No. 243 at 3, ¶ 7.

charges noticed under Rule 3002.1(c) by LoanCare LLC.[83]  Debtors' July 23, 2021 Plan still provides for surrender of Business Equipment to Algoe upon plan confirmation.[84]

### 1. Algoe's Motion to Dismiss Debtors' July 23, 2021 Plan

Algoe filed its Motion to Dismiss Debtors' July 23, 2021 Plan pursuant to Bankruptcy Rule 3015-2(f).  Algoe complains that:

> Debtor [sic] did not seek leave of court to dismiss their 4th Amended Debtor's [sic] Plan and Motion for Valuation of Collateral . . . . The attorney for Debtors, Marcos Oliva filed ECF No. 243 a 6th Amended Chapter 13 Plan on July 23, 2021 . . . during the middle of the contested evidentiary hearing on Mr. Oliva's clients [sic] 4th Amended Uniform Plan and Motion for Valuation of Collateral . . . without a court decision of [sic] the 4th Amended Uniform Plan and Motion for Valuation of Collateral.[85]

Algoe asserts that "Bankruptcy rule 3015-2(f) gives the ESTATE OF BILLY ALGOE 14 days to Object to the [July 23, 2021 Plan] but such Objection would be a nullity until [the Court] has made a final ruling on the [April 6, 2021 Plan]" and asks this Court to strike the July 23, 2021 Plan.[86] The motion also seeks sanctions against Debtors' attorney in the amount of $1,000 to be paid to Algoe's attorney, Larry Mark Polsky, pursuant to 28 U.S.C. § 1927 for Debtors' failure to seek leave of court to file an amended plan while a contested evidentiary hearing was ongoing.[87]  The Court considers each request in turn.

### a. Whether this Court should strike Debtors' July 23, 2021 Plan pursuant to Local Bankruptcy Rule 3015-2(f)

Algoe attached Local Bankruptcy Rule 3015-2(f) to its Motion to Dismiss as Exhibit A.[88]

Exhibit A reflects that Local Bankruptcy Rule 3015-2 "applies to all chapter 13 cases filed in all

---

[83] ECF No. 243 at 4, ¶ 8.
[84] *Id.* at 3, ¶ 7.
[85] ECF No. 246 at 1, ¶¶ 2–3.
[86] *Id.* at 1–2, ¶¶ 4, 8.
[87] *Id.* at 2, ¶¶ 5, 8.
[88] ECF No. 246-1 at 5.

divisions of the United States Bankruptcy Court for the District of Puerto Rico."[89]   That Local

Bankruptcy Rule does not apply in this Court, the United States Bankruptcy Court for the Southern

District of Texas.  The portion of that rule, however, that Algoe relies on is subsection (f), which

states:

> If an amended plan is filed less than fourteen (14) days before the first confirmation
> hearing or is filed after the first confirmation hearing, objections to that amended
> plan must be filed no later than fourteen (14) days after the date the amended plan
> is filed.  The objection shall be made by motion setting forth the facts and legal
> arguments that give rise to the objection in sufficient detail to allow the debtor to file
> a reply or an amended plan that addresses the objection.  The amended plan
> may be confirmed prior to the contested confirmation hearing date if no objection
> is filed within fourteen (14) days from the date that the amended plan is filed.[90]

The local rules that apply in this Court are the Bankruptcy Local Rules for the Southern

District of Texas.  Bankruptcy Local Rule 3015-1 applies to confirmation of chapter 13 plans in

this Court.  That rule states:

> (a) **Uniform Plan and Motion for Valuation of Collateral.** Pursuant to FED. R.
> BANKR. P. 3015.1, the Court requires that a Local Form Plan must be used instead
> of the Official Form Plan. The Local Form Plan is posted on the Court's website.
>
> (b) **Mortgage Payments Through the Chapter 13 Trustee.** Home mortgage pay-
> ments will be made through the chapter 13 trustee, in accordance with Chapter 13
> Trustee Procedures for Administration of Home Mortgage Payments ("Home Mort-
> gage Payment Procedures"). The Home Mortgage Payment Procedures adopted by
> the Court are posted on the Court's website.
>
> (c) **Plan Modifications.** To obtain a modification of a confirmed chapter 13 plan:
>
> > (1) The party seeking to modify the plan must file (i) a proposed modified
> > plan and a proposed modified plan summary, each utilizing the official
> > forms posted on the Court's website; and (ii) a proposed amended wage
> > order or electronic payment mechanism consistent with the proposed mod-
> > ification.

---

[89] *Id.* at 6, ¶ (a).
[90] *Id.* at 8, ¶ (f).  The local rules for the United States Bankruptcy Court for the District of Puerto Rico no longer contain Local Bankruptcy Rule 3015-2(f).   See  https://www.prb.uscourts.gov/sites/default/files/local_rules/PRLBRs-2013_Complete_0.pdf.

(2) The proposed modified plan must be self-calendared for a hearing on the next available date as scheduled on the Chapter 13 Trustee's website.

(3) If the proposed modified plan is filed by the Debtor(s), the Debtor(s) must simultaneously file amended schedules I and J.[91]

BLR 3015-1 does not contain a provision similar to Local Bankruptcy Rule 3015-2(f). Federal Rule of Bankruptcy Procedure 3015(f), however, does. Rule 3015(f) provides, "[a]n objection to confirmation of a plan shall be filed . . . at least seven days before the date set for the hearing on confirmation, unless the court orders otherwise."

Debtors' July 23, 2021 Plan was filed four days before the continued confirmation hearing on Debtors' April 6, 2021 Plan was scheduled to take place. At the July 27, 2021 continued hearing, Algoe orally objected to Debtors' July 23, 2021 Plan and requested leave of court to file a formal objection. That request was granted. Algoe's Motion to Dismiss was filed that same day and this Court did not hold a confirmation hearing on Debtors' July 23, 2021 Plan until August 12, 2021. Thus, in accordance with Rule 3015(f), parties in interest had well over seven days to object to Debtors' July 23, 2021 Plan.[92]

Nevertheless, Algoe asks this Court to strike the July 23, 2021 Plan because it was filed in the middle of a contested evidentiary hearing without leave of court and any objection thereto is a nullity until this Court has ruled on confirmation of the Fourth Amended Plan.[93] Algoe provides no support for the proposition that Debtors were required to seek leave of court to file their July 23, 2021 Plan amid a contested confirmation hearing. Moreover, even if Debtors were required to seek leave of court, the July 23, 2021 Plan in no way modifies the treatment of Algoe's Claim under the plan. As noted above, the amendment pertained solely to another creditor, LoanCare,

---

[91] BLR 3015-1.
[92] Fed. R. Bankr. P. 3015(f).
[93] ECF No. 246 at 1–2, ¶¶ 4, 8.

LLC.  Plus, Algoe filed an objection to Debtors' July 23, 2021 Plan, reiterating the same objections it made to the April 6, 2021 Plan.[94]

Accordingly, Algoe's request that this Court strike Debtors' July 23, 2021 is denied.

### b. Whether this Court should award sanctions against Debtors' counsel in the amount of $1,000

Algoe's second request is that this Court award Algoe's attorney $1,000 in attorney's fees to be paid by Debtors' counsel.  Algoe asserts that its counsel "spent a total of four (4) hours in the research and promulgation of this Motion" due to Debtors' counsel's failure to seek leave of court before filing the July 23, 2021 Plan.[95]  Algoe cites a non-binding opinion, *In re Johnson*, from the District of D.C. for the proposition that "[t]he power of the federal courts to sanction attorney misconduct, be it frivolous litigation or contemptuous behavior, is beyond doubt,"[96] and 28 U.S.C. § 1927 in support of its request.

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

To sanction an attorney pursuant to § 1927, this Court must find that the attorney multiplied the proceedings both unreasonably and vexatiously.[97]  This requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[98]

Debtors' counsel stated on the record that he filed the July 23, 2021 Plan because on July 20, 2021, LoanCare, LLC filed a Notice of Postpetition Mortgage Fees, Expenses, and Charges

---

[94] ECF No. 250.
[95] ECF No. 246 at 1–2, ¶¶ 3, 8.
[96] 236 B.R. 510, 524 (D.D.C. 1999).
[97] *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002) (quoting *FDIC v. Calhoun*, 34 f.3d 1291, 1297 (5th Cir. 1994)).
[98] *Id.* (quoting *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1992)).

pursuant to Federal Rule of Bankruptcy Procedure 3002.1.[99]   Debtors' counsel further explained that the amendment was necessary because if the post-petition fees were not accounted for in the Plan, the Plan would not be confirmable.[100]   Therefore, Debtors' counsel concluded, even if this Court resolved Algoe's objections to the April 6, 2021 Plan, that plan could not be confirmed without the addition of the post-petition fees.[101]   Given the explanation provided by Debtors' counsel for filing the July 23, 2021 Plan, this Court finds no evidence of bad faith, improper motive, or reckless disregard for a duty owed to this Court.   Debtors' counsel did not unreasonably and vexatiously multiply proceedings.

Accordingly, Algoe's request that this Court order Debtors' counsel sanctioned in the amount of $1,000 is denied.

### 2.   Algoe's Second Objection to Debtors' July 23, 2021 Plan

In its Second Objection, Algoe asserts that pursuant to 11 U.S.C. § 324(a) the Trustee "has violated her fiduciary duty to the Bankruptcy Estate in that she is unwilling to perform the duties of a Trustee and was not interested in preserving the Debtor's [sic] assets for division among the legitimate Bankruptcy Creditors."[102]   Algoe alleges that if the Trustee would have read the Notice of Witnesses and Exhibits in response to Debtors' objection to Algoe's Claim, the Trustee would have noticed that a Rhino Lining equipment and 2000 GMC truck sold for $28,500 at auction by Lone Star was not collateral of Lone Star, but rather collateral of Balboa Capital.[103]   The Trustee, Algoe continues, "ha[d] a fiduciary duty to obtain and preserve all possible assets for all legitimate Bankruptcy Creditors in this matter" and breached those duties by failing to preserve the Rhino

---

[99] August 12, 2021 Hearing at 3:32:15–3:33:31; *see also* ECF No. 237 (LoanCare, LLC's Notice of Postpetition Mortgage Fees, Expenses, and Charges).
[100] August 12, 2021 Hearing at 3:32:15–3:33:31.
[101] *Id.*
[102] ECF No. 220 at 1–2, ¶ 1.
[103] *Id.* at 2, ¶¶ 2–6.

Lining equipment and 2000 GMC truck for the benefit the creditors and not filing a motion to "claw back" the $28,500 in proceeds from the sale thereof.[104]

      Further, Algoe alleges, Trustee agreed to lift the automatic stay to allow Lone Star to auction its collateralized assets, but the Trustee never researched whether the items Lone Star was selling were actually collateral of Lone Star.[105]  Algoe asserts the Trustee failed to question how the 2000 GMC truck, a 10 year old vehicle, sold for $28,500, "something that any reasonably prudent Trustee would have questioned[,]" and the Trustee never requested a specific description of the items sold at the auction from Debtors' counsel, never inquired into how much Lone Star "netted" from the auction to reduce its collateralized loan, and never inquired into how much in attorneys' fees Lone Star paid itself from the auction proceeds.[106]  Algoe requests that this Court (1) deny confirmation of Debtors' Plan; (2) remove the Trustee; and (3) appoint a new Chapter 13 Trustee and order that trustee to claw back the $28,500 in proceeds Lone Star garnered from the auction of the 2000 GMC truck and Rhino Lining Equipment; or, in the alternative (4) order the Trustee to claw back the $28,500.[107]

      Pursuant to § 324(a), "[t]he court may remove a trustee, other than the United States trustee, or an examiner for cause."  Neither Fifth Circuit precedent nor the Bankruptcy Code defines "cause" under § 324(a).[108]  Cause is determined on a case-by-case basis, but may include trustee incompetence, violation of the trustee's fiduciary duties, misconduct, failure to perform the trustee's duties, lack of disinterestedness, or holding an interest adverse to the estate.[109]  The

---

[104] *Id.* at 2, ¶ 7.

[105] *Id.* at 2–3, ¶ 9.

[106] *Id.* at 3–4, ¶ 15.

[107] *Id.* at 4.

[108] *Smith v. Robbins (In re IFS Fin. Corp.)*, 803 F.3d 195, 206 (5th Cir. 2015).

[109] *In re JMW Auto Sales*, 494 B.R. 877, 891 (Bankr. S.D. Tex. 2013) (quoting *Dye v. Brown, et al. (In re AFI Holding, Inc.)*, 530 F.3d 832, 845 (9th Cir. 2008)).

Bankruptcy Code is likewise silent as to the standard of proof required to remove a trustee.[110] When the Bankruptcy Code is silent, the Supreme Court has held that a preponderance of evidence standard is presumed unless particularly important individual interests or rights are at stake.[111] However, as noted in *JMW*, "*Grogan*'s evidentiary presumption is limited to 'civil actions between private litigants.'"[112]   Some courts have employed the clear and convincing evidence standard given that removal of the trustee is an extreme remedy.[113]   Section 324(b) provides that whenever a trustee is removed, the trustee shall thereby be removed in all other cases where she serves as the trustee, unless otherwise ordered by the court.[114]   Where a trustee breached her fiduciary duty, § 324(b) should be invoked.[115]   Conversely, in cases where the trustee is removed for a lesser cause, ordering the trustee removed from only that one case may be appropriate.[116]

Here, Algoe alleges that the Trustee breached her fiduciary duties to Debtors' bankruptcy estate, committed misconduct, and was disinterested, showing favoritism toward Lone Star.  As to the Trustee's alleged breach of her fiduciary duties, Algoe must prove by clear and convincing evidence that the Trustee should be removed for cause.  As to the Trustee's alleged misconduct, which includes Algoe's allegations that the Trustee was disinterested in performing her duties by failing to obtain the Rhino Lining equipment and that thereby the Trustee showed indifference toward protecting Debtors' other creditors in favor of Lone Star,[117] Algoe must prove by a

---

[110] *Id.* at 889.

[111] *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).

[112] *Id.* (quoting *Grogan*, 498 U.S. at 286).

[113] *See, e.g.*, *In re IFS Fin. Corp.*, 803 F.3d at 206–08 (finding that the bankruptcy court did not abuse its discretion in finding sufficient cause to remove the trustee); *In re JMW Auto Sales*, 494 B.R. at 889; *In re CNC Payroll, Inc.*, 491 B.R. 454, 460–61 (Bankr. S.D. Tex. 2013).

[114] 11 U.S.C. § 324(b).

[115] *In re JMW Auto Sales*, 494 B.R. at 889.

[116] *Id.*

[117] Algoe alleges that the Trustee was "disinterested" and therefore, should be removed.  Algoe misinterprets the law. Cause for removing a trustee may include a *lack* of disinterestedness, or in other words, the trustee has "some interest or relationship that would even faintly color the independence and impartial attitude required by the Code." (cleaned up) *In re AFI Holdings, Inc.*, 530 F.3d at 838.  Algoe neither alleged nor offered evidence to show that the Trustee

preponderance of the evidence that the Trustee should be removed for cause.

### a.  Whether the Trustee breached her fiduciary duties

Pursuant to § 1302, a chapter 13 trustee must, inter alia, perform the duties outlined in § 704(a)(2)–(7) and (9).[118]  Algoe's Second Objection does not specifically identify which of the Trustee's duties under § 704 she failed to satisfy.[119]  However, in its Post Hearing Brief, Algoe points to § 704(a)(1), (2), (4), (5), and (6), placing emphasis on subsection (a)(4).[120]

First, § 704(a)(1) does not apply to chapter 13 trustees.[121]  Second, § 704(a)(6) says, "[t]he trustee shall if advisable, oppose the discharge of the debtor."  Debtors have not yet requested a discharge so the Trustee's duty under (a)(6) has not arisen.  Third, § 704(a)(2) requires the trustee to "be accountable for all property received."  Federal Rule of Bankruptcy Procedure 2015, in accordance with § 704(a)(2), requires a chapter 13 trustee to "keep a record of receipts and the disposition of money and property received."[122]  A chapter 13 trustee is accountable for "future earnings or other future income of the debtor," which is required by § 1322(a)(1) to be submitted "to the supervision and control of the trustee as is necessary for the execution of the plan."  A chapter 13 trustee is also responsible for the recovery of overpayments improperly distributed because "the trustee is accountable for all the property received and the party responsible for making distributions to creditors."[123]

---

had an interest in or relationship with any creditor.  Algoe merely alleges that the Trustee's failure to seek turnover of the Rhino Lining equipment or subsequently "claw back" $28,500 from Lone Star evince the Trustee's indifference to other creditors in favor of Lone Star.  That is not the same as a lack of disinterestedness.  Therefore, this Court analyzes allegations related to disinterestedness or indifference as general misconduct by the Trustee.

[118] 11 U.S.C. § 1302(b).

[119] ECF No. 220.

[120] ECF No. 248 at 2.

[121] 11 U.S.C. § 1302(b).

[122] FED. R. BANKR. P. 2015(c)(2) ("In a chapter 13 individual's debt adjustment case, when the debtor is not engaged in business, the trustee shall perform the duties prescribed by clause (2) of subdivision (a) of this rule.").

[123] *Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 484 (Bankr. E.D. Tenn. 2002) (citing 11 U.S.C. §§ 704(2), 1302(b)(1), 1326(c)).

As correctly asserted by Algoe, a chapter 13 trustee has a duty to preserve the bankruptcy estate for creditors; however, Algoe fails to acknowledge that the trustee is only accountable for property *received*.[124]   As noted above, that property is typically the debtor's future earnings or other future income that the trustee will utilize to pay to creditors under the plan.[125]   Although a claim against the debtor could also be paid from property of the estate or property of the debtor under the plan pursuant to § 1322(a)(8), "there is no necessity that the property be conveyed via the trustee, or that the trustee's fee be paid with respect to that property."[126]

Here, the Trustee never received the 2000 GMC truck or Rhino Lining equipment Algoe complains about.  According to the judgment in the State Court Lawsuit ("*State Court Judgment*"), the Cameron County Sheriff's Department executed a writ of sequestration on January 23, 2020, taking possession of those items.[127]   Debtors did not file for bankruptcy until February 27, 2020.[128] As of June 1, 2020, when this Court entered the Agreed Order Granting Lone Star National Bank's Motion for Relief from Automatic Stay Regarding Non-Exempt Property, the Rhino Lining equipment, which Algoe pleads was in the 2000 GMC truck, and the truck itself were being stored by the Cameron County Sheriff's Department.[129]   As detailed in Debtors' Amended Schedule A/B, the 2000 GMC truck and Rhino Lining equipment was "surrendered [by Debtors] to Lone Star National Bank pursuant to Agreed Order Granting LSNB's Motion for Relief from Automatic Stay (Doc. No. 40)."[130]   Those items were later sold at auction on August 15, 2020 by Lone Star through

---

[124] *Brown v. Viegelahn (In re Brown)*, 960 F.3d 711, 717 (5th Cir. 2020) (emphasis in original) (noting that the chapter 13 trustee did not have a statutory duty to preserve the debtor's excess disposable income because it was not property that the trustee received).
[125] 11 U.S.C. § 1322(a)(1).
[126] COLLIER ON BANKRUPTCY ¶ 1322.12 (Richard Levin & Henry J. Sommer eds., 16th ed.).
[127] ECF No. 29-6 at 2.
[128] ECF No. 1.
[129] ECF No. 40.
[130] ECF No. 227 at 9, ¶ 40.

an auctioneering company.[131]

Moreover, as explained by the bankruptcy court for the Western District of Michigan:

> Although bankruptcy professionals and courts generally acknowledge that a bankruptcy trustee has a duty to preserve property of the estate, the relevant statute frames the fiduciary's obligation differently: "The Trustee shall . . . be accountable for all property received." 11 U.S.C. § 704(a)(2).  This concept of accountability recognizes the extremely difficult job of a bankruptcy trustee who, after all, is a fiduciary of an estate in which numerous beneficiaries or stakeholders hold competing and often conflicting interests.  To hold that a trustee in order to "account" to secured creditors has an *unqualified* duty to spend money to preserve fully-encumbered estate property would make it impossible for the same trustee to "account" to the unsecured creditors.  By framing the trustee's duty more flexibly in terms of accountability rather than preservation, the drafters recognized the collective nature of the proceeding, and the frequently divergent interests in the case and the property of the estate.  As in most bankruptcy controversies, a trustee must be guided by the need to maximize value for the estate, not just the secured creditors (for whom the Bankruptcy Code affords ample protection).[132]

If the 2000 GMC truck and Rhino Lining equipment were fully encumbered estate property, then the Trustee was not required to expend estate assets to preserve them.[133]  The Court first considers the Trustee's duty under § 704(a)(2) with respect to the 2000 GMC truck and second to the Rhino Lining equipment.

It is uncontested that the 2000 GMC truck was owned by Debtor and that his name was the only one on the title before it was sold at auction by Lone Star.[134]  However, attached to Lone Star's Motion for Relief from Stay filed May 4, 2020, is a Loan Agreement and a Security Agreement executed on May 1, 2015 by Luis Gutierrez d/b/a South Shore Automotive.[135]  The Security Agreement states: "I give you a security interest in all of the Property described below that I own

---

[131] July 8, 2021 Hearing at 10:21:55–10:22:05.

[132] *New Prods. Corp. v. Tibble (In re Modern Plastics Corp.)*, 543 B.R. 819, 830 (2016).

[133] *See id.* (stating that in response to the defendants' summary judgment motion, the court observed that "[w]here a particular piece of estate property is fully encumbered, a trustee ought not to expend estate resources to protect or preserve that property, because the benefit of the expenditure inures to the secured creditors at the expense of the unsecured.").

[134] July 27, 2021 Hearing at 3:47:15–3:47:55.

[135] ECF Nos. 29-1, 29-2.  Pursuant to Federal Rule of Evidence 201, this Court takes judicial notice of ECF No. 29, Lone Star's Motion for Relief from the Stay, and the exhibits thereto at ECF Nos. 29-1 through 29-8.

or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property."[136]  The agreement specifically states that the security interest is in, inter alia, "[a]ll equipment including, but not limited to, machinery, *vehicles*, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools."[137]  Lone Star also attached a UCC-1 Financing Statement to its Motion for Relief, which included "vehicles" as collateral for Lone Star's Loan.[138]

> Additionally, the State Court Judgment specifically found that:
>
> Plaintiff LONE STAR NATIONAL BANK has a valid and subsisting security interest in the following collateral: . . . [a]ll equipment including, but not limited to . . . vehicles . . . which includes, without limitation, all personal property and vehicles currently in the possession of the Cameron County Sheriff's Department pursuant to the writ of sequestration ordered by this Court and executed on January 23, 2020.[139]

Lone Star attached that judgment to its Motion for Relief and ultimately entered into the Agreed Order with Debtors and their attorney.[140]  That Agreed Order was approved and entered by this Court on June 1, 2020.[141]  That order lifted the stay and permitted Lone Star to "exercise any and all rights it may have in accordance with Texas law and the security documents pledging such Collateral" and specifically identified "the 2000 GMC C-Series White (VIN 1GDE6H1B0YJ900126) . . . currently in the possession of the Cameron County Sheriff's Department pursuant to a writ of sequestration."[142]  Given the evidence, this Court concludes that the 2000 GMC truck was fully encumbered

---

[136] ECF No. 29-1 at 1.
[137] *Id.* (emphasis added).
[138] ECF No. 29-3 at 1.
[139] ECF No. 29-6 at 1–2.
[140] ECF No. 40.
[141] *Id.*
[142] *Id.* at 2.

by Lone Star and thus, the Trustee had no duty under § 704(a)(2) to expend estate resources to preserve that truck.[143]

It is also uncontested that Balboa Capital financed the Rhino Lining equipment.[144]  However, Balboa Capital did not file a proof of claim, assert its lien, or otherwise participate in this case.  Lone Star, on the other hand, demonstrated that it had a security interest in the Rhino Lining equipment.  As stated above, Lone Star's Loan, Security Agreement, State Court Judgment, and this Court's Agreed Order expressly note Lone Star's interest in "[a]ll equipment including . . . shop equipment."[145]  "Shop equipment" is also listed on Lone Star's UCC-1 Financing Statement.[146]  Algoe offered no evidence demonstrating that Lone Star does not have a security interest in the Rhino Lining equipment.  Lone Star's counsel also asserted that upon searching, he did not find a UCC-1 Financing Statement listing Balboa Capital as a secured party and Luis Gutierrez as a debtor.[147]  Thus, whether fully encumbered by Balboa Capital,[148] Lone Star, or some combination of both, the Rhino Lining equipment is a fully encumbered estate asset.

Accordingly, the Trustee had no duty under § 704(a)(2) to preserve the Rhino Lining equipment.[149]

Fourth, § 704(a)(4) provides, "[t]he trustee shall . . . investigate the financial affairs of the debtor."  Pursuant to § 521(a)(1)(B)(iii) and Federal Rule of Bankruptcy Procedure 7001(b)(1)(D) the debtor has a duty to file a statement of financial affairs.  The chapter 13 trustee investigates those affairs and based on that investigation, decides whether to oppose or support confirmation

---

[143] *See In re Modern Plastics Corp.*, 543 B.R. at 830.
[144] July 27, 2021 at 3:48:02–3:59:02.
[145] ECF Nos. 29-1, 29-2, 29-6, 40.
[146] ECF No. 29-3 at 1.
[147] July 8, 2021 Hearing at 10:29:52–10:30:20.
[148] *See* Fed. R. Bankr. P. 3002(a) ("A lien that secures a claim against the debtor is not void due only to the failure of any entity to file a proof of claim.")
[149] *See In re Modern Plastics Corp.*, 543 B.R. at 830.

of the chapter 13 plan.[150]  The Handbook for Chapter 13 Standing Trustees details two other specific duties of the trustee pertaining to the debtor's financial affairs: (1) the trustee "has an independent duty to review documents pertaining to compensation paid or agreed to be paid to the debtor's attorney or bankruptcy petition preparer" and (2) the trustee is to conduct a creditor's meeting wherein the debtor is questioned about matters affecting his financial affairs.[151]  A chapter 13 trustee must also use her business judgment to determine whether to pursue an avoidance action.[152]  In at least one case under chapter 7—not chapter 13—the court found cause to remove the trustee for failure to investigate the financial affairs of the debtor because the trustee failed to pursue possible avoidable preferences.[153]  Here, again, Algoe neither alleges nor offers evidence that the Trustee did not review Debtors' statement of financial affairs, review documents pertaining to the compensation of Debtors' attorney, conduct a 341 creditors' meeting, or pursue an avoidance action.  Lone Star demonstrated its interest in all shop equipment and vehicles belonging to Debtor and auctioned the Rhino Lining equipment and 2000 GMC truck pursuant to the Agreed Order entered by this Court.[154]

Accordingly, Algoe has not demonstrated by clear and convincing evidence that the Trustee breached her fiduciary duty to investigate Debtors' financial affairs,[155] and any such request that the Court find that the Trustee breached her fiduciary duty to investigate Debtors' financial affairs is denied.

---

[150] 457 F.3d 448, 457 (5th Cir. 2006).

[151] Executive Office for United States Trustees, *Handbook for Chapter 13 Standing Trustees*, U.S. Department of Justice, 3–7–3–8 (2012), https://www.justice.gov/sites/default/files/ust/legacy/2015/05/05/Handbook_Ch13_Standing_Trustees_2012.pdf

[152] *Id.* at 3-38.

[153] *In re Schoen Enters., Inc.*, 76 B.R. 203, 206 (Bankr. M.D. Fla. 1987).

[154] ECF Nos. 29, 40.

[155] *See Terry v. Sparrow*, 328 B.R. 450, 455–56 (M.D. N.C. 2005) (finding that the bankruptcy court properly denied the debtor's motion to remove the chapter 7 trustee for failure to investigate the financial affairs of the debtor to pursue possible avoidable preferences because the debtor failed to allege or establish any preferential transfers that the trustee failed to investigate).

Fifth, § 704(a)(5) provides, "[t]he trustee shall . . . if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper."  Both a chapter 13 debtor and the chapter 13 trustee have a duty to object to a claim not entitled to allowance against a bankruptcy estate.[156]  Algoe has not alleged that Lone Star's proof of claim was erroneous and Algoe has neither alleged nor offered any evidence demonstrating that the Trustee failed to examine or object to Lone Star's proof of claim.

Accordingly, Algoe has not shown by clear and convincing evidence that the Trustee failed to perform her duties pursuant to § 704(a)(5) and any request that this Court find that the Trustee failed to perform her duties pursuant to § 704(a)(5) is denied.

### b.  Whether the Trustee engaged in misconduct

Algoe alleges that the Trustee was disinterested in performing her duties, showing indifference to the other estate creditors in favor of Lone Star because she didn't preserve the Rhino Lining equipment for the benefit of the other estate creditors.[157]  As discussed above, because Lone Star demonstrated that it held a security interest in the Rhino Lining equipment, that asset was not for the Trustee to preserve.  Algoe next alleges that the Trustee agreed to lift the automatic stay to allow Lone Star to auction its collateralized assets, but never researched which assets collateralized Lone Star's loan.[158]  That allegation is inaccurate.  The Agreed Order shows that only Debtors, their attorney, and Lone Star were parties to the agreement.[159]   Lastly, Algoe complained at the July 27, 2021 hearing that it put the Trustee on notice of several "frauds" occurring in this case and she failed to investigate a single one.  In support, Algoe provided an email sent by Randy Algoe to the Trustee dated May 11, 2020.

---

[156] COLLIER ¶ 502.02[2][a].
[157] ECF No. 220 at 2–3, ¶¶ 8, 14.
[158] *Id.* at 2–3, ¶ 9.
[159] ECF No. 40.

In that email, Randy Algoe "report[ed] several frauds upon the courts by [Debtor], his attorney, and Lone Star National Bank (LSNB)."[160]  Those "frauds" included a landlord lien waiver Randy Algoe claims was not effective against property collateralized by Algoe, a loan made to Debtor by Lone Star allegedly under false pretenses and without the required verifications, and an allegedly illegal writ of sequestration issued by a state court judge in favor of Lone Star.[161]  Randy Algoe's proposed remedy was that Lone Star be dismissed as a creditor and the FBI investigate Lone Star, its attorneys, Debtor, and Debtor's brother.[162]  On May 12, 2020, the Trustee responded to Randy Algoe's email, advising him to seek legal advice and stating, "[a]s the trustee in the case I do not represent either the debtor or a given creditor."[163]  Shortly thereafter on July 6, 2020, Algoe's attorney entered an appearance and has since represented Algoe's interests in this case.[164]

The Trustee is a representative of the estate[165] and her duty is to preserve the bankruptcy estate for creditors.[166]  That requires the Trustee to consider whether a particular action will maximize the value of the estate.[167]  The Court finds that Trustee acted reasonably in advising a secured creditor to seek legal advice, particularly because the Bankruptcy Code offers ample protection to secured creditors like Algoe.[168]  Additionally, the United States Trustee appeared at the August 12, 2021 hearing and represented to the Court that the UST conducted a review of the matter and found no cause to remove the Trustee as this time.[169]

---

[160] ECF No. 234-1 at 6.
[161] *Id.*
[162] *Id.*
[163] *Id.* at 8.
[164] ECF No. 50.
[165] 11 U.S.C. § 323(a).
[166] *In re Brown*, 960 F.3d at 717.
[167] *In re Modern Plastics Corp.*, 543 B.R. at 830.
[168] *See id.*
[169] August 12, 2021 Hearing at 4:03:25–4:04:00.

Accordingly, Algoe has not demonstrated by a preponderance of the evidence that cause exists to remove the Trustee for misconduct and any request that the Court remove the Trustee for misconduct is denied.

### 3. Algoe's Third Objection to Debtors' July 23, 2021 Plan

In its Third Objection, Algoe asks this Court to find that "Debtor's [sic] attempt in paragraph 7 of the Uniform Plan and Motion for Valuation of Collateral dated July 23, 2021 to make the $53,340…Judgment of the ESTATE OF ALGOE a **'surrendered asset'**" is denied.[170]  Specifically, Algoe objects to its treatment under paragraph 7 of Debtors' Plan, which proposes to surrender "Business Equipment" to Algoe.  Algoe argues that the Plan fraudulently states that the business equipment of the Estate of Billy Algoe was surrendered, an action that never took place.[171]  This raises two issues: first, whether Debtors can treat Algoe's Claim under the Plan by surrendering the collateral securing Algoe's Claim and second, whether Debtors' Plan was proposed in good faith. Algoe also asks this Court to find that the $53,340 comprising Algoe's Claim is non-dischargeable.[172]  Algoe argues that the Claim must be treated as non-dischargeable because Debtors still possess personal property assets that secure Algoe's Claim.  Lastly, Algoe asks this Court to reduce its secured judgment for past due commercial rent per the formula set forth in *Kohn v. Leavitt-Berner Tanning Corp.*, 157 B.R. 523 (Bankr. N.D.N.Y. 1993).  The Court addresses these requests in reverse order.

### a. Whether this Court should reduce Algoe's Claim based on the formula set forth

---

[170] ECF No. 250 at 3 (emphasis in original).
[171] *Id.* at 1–2, ¶ 2.
[172] *Id.*

in *Kohn*

Algoe argues that § 502 applies to past due rents and that this Court should utilize the formulas in the Bankruptcy Code in computing the past due rent owed to Algoe.[173]  Algoe also argues that *Kohn* "sets forth the correct formulas" that this Court must use to compute the past due commercial rent judgment of Algoe.[174]  Section 502(a) provides that a claim set forth in a proof of claim is deemed allowed, unless a party in interest objects.  Section 502(b)(6) provides that where a party in interest objects, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency . . . and shall allow such claim in such amount except to the extent that . . . such claim exceeds the rent reserved by [the] lease . . . plus any unpaid rent due under the lease . . . ."  Debtors filed an objection to Algoe's Claim on the basis that the proof of claim was untimely filed and that the state court judgment was void for lack of subject matter jurisdiction.[175]  This Court overruled that objection.[176]  Debtors' attorney also stipulated on the record that Algoe holds a secured claim in the amount of $53,340.

Accordingly, Algoe's request that this Court adjust its Claim in accordance with the formulas set forth in *Kohn* and § 502 is denied as moot.

Algoe lastly argues that § 503 applies to past due rents and this Court should utilize the formula therein to compute the past due rent owed to Algoe "even though no items of personal property presently exist to secure said back rent."[177]  Section 503 pertain to administrative expenses.  Generally, the administrative expenses allowed under § 503 are "the actual, necessary costs and expenses of preserving the estate[.]"  The verbal lease between Debtor and Billy R. Algoe

---

[173] *Id.* at 2, ¶ 8.
[174] *Id.* ¶ 6.
[175] ECF No. 91.
[176] ECF No. 152.
[177] ECF No. 250 at 2, ¶ 9.

was terminated before Debtors filed for bankruptcy.[178]  It is uncontested that Debtor has not occupied the Property since December 10, 2018.[179]  Algoe's Claim in no way relates to preservation of the estate and is therefore not an administrative expense.

Accordingly, Algoe's § 503 request is denied.

### b.   Whether Algoe's Claim is non-dischargeable

Pursuant to Federal Rule of Bankruptcy Procedure 7001, a proceeding to determine the dischargeability of a debt must be brought in the form of an adversary proceeding.[180]  The instant proceeding relates solely to confirmation of Debtors' July 23, 2021 Plan.

Accordingly, Algoe's request that this Court find its Claim non-dischargeable is denied.

### c.   Whether Debtors may surrender "business equipment" to Algoe under their Plan

This Court first notes that Algoe's objection to Debtors' Plan on the ground that it fraudulently states that business equipment securing Algoe's Claim was surrendered is little more than a collateral attack on not only this Court's Agreed Order,[181] but also this Court's Order denying Algoe's Motion to Declare Auction Void,[182] both final orders.[183]  Despite receiving notice of Lone Star's Motion for Relief,[184] Algoe never filed an objection and never appealed the Agreed Order. Instead, Algoe filed a Motion to Declare Auction Void.[185]  After a hearing, this Court denied

---

[178] August 12, 2021 Hearing at 2:51:30–2:51:53.
[179] ECF No. 234-1 at 6; June 10, 2021 Hearing at 10:51:46–10:51:55; 10:56:46–10:57:46.
[180] FED. R. BANKR. P. 7001(6).
[181] ECF No. 40.
[182] ECF No. 120.
[183] *Chunn v. Chunn (In re Chunn)*, 106 F.3d 1239, 1241 (5th Cir. 1997) ("[A]n order granting relief from an automatic stay is a final and appealable order.").  *See Bullard*, 575 U.S. at 501 ("A bankruptcy case involves an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor. Accordingly, Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case.") (internal quotation marks omitted) (first citing COLLIER ON BANK-RUPTCY ¶5.08[1][b] (16th ed. 2014), then citing *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657, n.3 (2006)).
[184] ECF No. 29 at 8.
[185] ECF No. 64.

Algoe's Motion.[186]  Algoe never appealed that Order either.  Yet, Algoe again lodges the same basic complaint about the collateral, Lone Star's interest in the collateral, and Debtors' disposition of the collateral.[187]  Nevertheless, this Court has a duty to ensure Debtors' Plan is confirmable and that requires this Court to find that § 1325(a)(5)—the provision directly called into question by Algoe's Objection—has been satisfied

To resolve the remaining issues in this contested chapter 13 plan confirmation, this Court must determine (i) whether Debtors' treatment of Algoe's Claim in their proposed chapter 13 plan satisfies the requirements for confirmation and (ii) whether the remainder of Algoe's Claim should be treated as a general unsecured claim in this case.  The Court will address each in turn.

### i.  Surrender of collateral pursuant to 11 U.S.C. § 1325(a)(5)(C)

To obtain confirmation of their Plan under chapter 13, Debtors must establish, by a preponderance of the evidence, that their Plan satisfies the requirements for confirmation under § 1325(a).  To satisfy § 1325(a) one of the following must occur: (1) the secured creditor accepts the plan;[188] (2) the debtor utilizes the "cram down" power;[189] or (3) the debtor surrenders to the creditor the property securing the claim.[190]  Debtors elected the third option and propose to surrender: (1) inventory, furniture, fixtures, equipment, and Mach-Rhino Linings of SP to the Cameron County Tax Office; (2) inventory, furniture, fixtures, equipment, and Mach-South Shore Automotive to the Cameron County Tax Office; (3) equipment and inventory for South Shore Automotive to Lone Star; and (4) business equipment to the Estate of Billy R. Algoe.[191]

---

[186] ECF No. 120.

[187] *Compare* ECF No. 64 *with* ECF No. 250.

[188] 11 U.S.C. § 1325(a)(5)(A).

[189] *Id.* § 1325(a)(5)(B).  Under "cram down," the debtor retains the property over the creditor's objection and the debtor must provide the creditor with payments over the life of the plan, that will total the present value of the allowed secured claim.  *Assocs. Com. Corp. v. Rash,* 520 U.S. 953, 962 (1997).

[190] *Id.* § 1325(a)(5)(C).

[191] ECF No. 191 at 3, ¶ 7.

The crucial issue before the Court is whether the present disposition of the Collateral constitutes "surrender."[192]  Although not defined in the Bankruptcy Code, several courts have interpreted the word "surrender" to mean the relinquishment of all a debtor's rights, including possession, in property securing a claim.[193]  In other words, surrender does not require the actual delivery of the collateral to the creditor, but it does require the debtor to make the collateral available to the creditor.[194]  Thus, this Court considers whether Debtors have effectively relinquished all rights in the collateral such that surrender has been effectuated, absent Debtors' physical deliver the collateral to Algoe.

Algoe's objections to its treatment under the Plan center around the disposition and character of collateral that remained on the Property after Algoe constructively evicted Debtor from the Property.  That collateral was utilized by Debtor for both personal use and in operation of his auto repair business, for which he leased the Property.  Prior to Debtors filing bankruptcy, the Cameron County Sheriff's Department, on behalf of Lone Star, seized the items listed in Debtors' Schedule B ("*Repossessed Collateral*")[195] pursuant to writ of sequestration resulting from the State Court Judgment.[196]  There were five additional items to which Lone Star was entitled under the State Court Judgment that the Cameron County Sheriff's Department did not seize during execution of the writ: a Jenny 80 Gal Air Compressor ("*Compressor*"), a Challenger 14K Four Post Lift

---

[192] June 10, 2021 Hearing at 10:33:44–10:35:05.

[193] *E.g.*, *In re Stone*, 166 B.R. 621, 623 (Bankr. S.D. Tex. 1993) (citing *In re Robertson*, 72 B.R.. 2, 4 (Bankr. D. Colo. 1985); *IRS v. White (In re White)*, 487 F.3d 199, 205 (4th Cir. 2007); *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 18–19 (1st Cir. 2006) (interpreting the word surrender in § 521(a)(2)); *In re Higley*, 539 B.R. 445, 449 (Bankr. D. Vt. 2015).

[194] *In re Higley*, 539 B.R. at 449 (citing *In re White*, 487 F.3d at 205; *In re Pratt*, 462 F.3d at 18–19); *see also In re Russell*, 2014 Bankr. LEXIS 4194, at *4 (Bankr. N.D. Ga. Sept. 11, 2014); *In re Alexander*, 225 B.R. 665, 666 (Bankr. E.D. Ark. 1998).

[195] ECF No. 227 at 9, ¶ 40.

[196] ECF Nos. 29-6, 29-7.

("*Four Post Lift*"), a Rotary Two Post Lift ("*Two Post Lift*"), a Ford F-150 truck,[197] and a Snap-On brand computerized diagnostic machine.[198]

### Disposition of the Repossessed Collateral

After Debtors filed for bankruptcy, Lone Star filed a Motion for Relief, asking this Court to lift the automatic stay and allow it to foreclose on Debtors' property that was still in possession of the Cameron County Sheriff's Department.[199]  Despite receiving notice of the Motion for Relief, Algoe did not file an objection thereto.  This Court entered an Agreed Order between Debtors and Lone Star resolving Lone Star's Motion for Relief, lifting the automatic stay and permitting Lone Star to foreclose on all Debtors' non-exempt inventory and equipment including, but not limited to machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools, and including specifically two vehicles: the 2000 GMC truck and a 1994 Jeep Grand Cherokee.[200]  Subsequently, Lone Star sold the Repossessed Collateral at auction.  This Court finds that Debtors relinquished both their possession of and interest in the Repossessed Collateral by entering into the Agreed Order with Lone Star.  The question is whether that relinquishment also made the Repossessed Collateral available to Algoe, thereby effectuating surrender to Algoe.

Algoe argues that because the Collateral was repossessed by Lone Star, Debtors' relinquishment was not voluntary and therefore does not constitute surrender.  Algoe provides no

---

[197] June 10, 2021 Hearing at 10:54:26–10:54:47, 11:06:00–11:06:15.

[198] At the June 10, 2021 hearing, Debtor credibly testified that the Snap-On diagnostic machine was not seized by Lone Star because although the box for the machine was on the Property, the machine itself was missing.  June 10, 2021 Hearing at 10:46:46–10:48:30.  Debtor testified that he did not question his four employees about the missing Diagnostic Machine because he trusted them, he did not file a police report, and he did not file an insurance claim, but he did report the missing diagnostic machine to Snap-On. *Id.* at 10:59:04–11:02:31. None of the parties raised concerns about the diagnostic machine.  Therefore, this Court need not determine whether Debtors met their burden to establish surrender of the machine and the missing machine does not impact whether Debtors have satisfied their burden for surrender under § 1325(a)(5)(C).

[199] ECF No. 29.

[200] ECF No. 40.

support for that proposition.  Nevertheless, the Court need not decide whether a debtor's relinquishment of its rights in collateral must be voluntary to constitute surrender because Debtors here agreed—a voluntary act—to lifting the automatic stay and allowing Lone Star to exercise its right to foreclose on the Repossessed Collateral.[201]

Debtors' surrender to Lone Star also constitutes a surrender of the Repossessed Collateral to Algoe.  Surrender under § 1325(a)(5)(C) is completed at or before plan confirmation.[202]  A chapter 13 debtor's plan proposal to treat a secured claim by surrendering collateral is a request for authorization to surrender, and a confirmation order authorizes that surrender.[203]  If a debtor proposes to surrender property subject to more than one secured claim, it is preferred that the property is surrendered to all secured creditors, providing for foreclosure or other disposition so the creditors' claims can be valued against the property and any resulting unsecured claims can be ascertained.[204]  However, even if simultaneous surrender and foreclosure does not occur, it does not mean that the property has not been meaningfully surrendered under § 1325(a)(5)(C).[205]

Here, paragraph 7 of Debtors' Plan proposes to surrender "equipment" to Lone Star and "business equipment" to Algoe, both of which necessarily overlap and encompass most, if not all, of the Repossessed Collateral.[206]  The record demonstrates that Lone Star's interest in the Repossessed Collateral was superior to that of Algoe's interest.  First, the Landlord Waiver, executed on October 27, 2014, by Randy Algoe "under Power of Attorney for Billy R. Algoe," subordinated Algoe's security interest in the Repossessed Collateral to that of Lone Star's security interest.[207]

---

[201] See *id.*.

[202] *In re White*, 487 F.3d 199, 207 (4th Cir. 2007).

[203] *In re Gay*, 375 B.R. 343, 347 (Bankr. E.D. Tex. 2007).

[204] *In re Toth*, 61 B.R. 160, 171 (Bankr. N.D. Ill. 1986); *see also In re Stone*, 166 B.R. 621, 623 (Bankr. S.D. Tex. 1993); *In re Carter*, 390 B.R. 648, 652 (Bankr. W.D. Mo. 2008).

[205] *In re Carter*, 390 B.R. 648, 652 (Bank. W.D. Mo. 2008).

[206] *Compare* ECF No. 243 at 3, ¶ 7 *with* ECF No. 227 at 9, ¶ 40.

[207] June 10, 2021 Hearing Debtors' Ex. C.

Algoe stipulated that it executed the Landlord Waiver and agreed to all the terms and conditions therein,[208] but, Algoe argues, those terms applied solely to a contract between Debtors and Lone Star dated October 27, 2014, not a later executed contract between Debtors and Lone Star dated May 1, 2015.[209]  However, the Landlord Waiver expressly stated that subordination of Algoe's interest "continue[s] so long as any sum remains owing from [Debtors] to [Lone Star]."[210]

Second, the State Court Judgment granted Lone Star a security interest in:

All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of serve, or which are raw materials, work in process, or materials used or consumed in [Borrower's] business, and All equipment including, but not limited to machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools.[211]

The State Court Judgment also expressly subordinated Algoe's landlord's lien in any of the above-described items to that of Lone Star's security interest and lien in those items.[212]  Algoe offered no evidence that it appealed that State Court Judgment.  Therefore, Lone Star has a superior interest and Algoe has a subordinated interest in the Repossessed Collateral that Debtors propose to surrender under paragraph 7 of their Plan.[213]  Upon confirmation that surrender will be authorized and the Repossessed Collateral will be meaningfully surrendered to both Lone Star and Algoe.

Accordingly, with respect to the Repossessed Collateral, Debtors have established that it was surrendered pursuant to § 1325(a)(5)(C).

**Disposition of the Compressor, Two Post Lift, Four Post Lift, and Ford F-150**

---

[208] June 10, 2021 Hearing at 11:44:25–11:44:45.
[209] ECF No. 250 at 2, ¶ 5.
[210] June 10, 2021 Hearing Debtors' Ex. C.
[211] ECF No. 29-6 at 1–2.
[212] ECF No. 29-6 at 2.
[213] ECF No. 243 at 3, ¶ 7.

As noted above, the Compressor, Two Post Lift, Four Post Lift, and Ford F-150 to which Lone Star was legally entitled to repossess were not seized upon execution of the writ of sequestration. It is uncontested that the Compressor, Two Post Lift, and Four Post Lift remain on the Property.[214] It is also uncontested that Randy Algoe relocated the Ford F-150 truck to a friend's property in Cameron County for storage.[215]

Lone Star, through its attorney, represented to this Court that the Compressor, Two Post Lift, and Four Post Lift were not repossessed due to logistical issues and that Lone Star is abandoning its interest in those three items.[216] Although Lone Star did not explain why the Ford F-150 was not removed, it was later revealed that at the time of seizure, the truck was hoisted up on one of the lifts.[217] Throughout the numerous hearings on confirmation, Lone Star never expressed an intent to assert any interest in or seek possession of the Ford F-150 from Algoe. Therefore, this Court finds that Lone Star has also abandoned its interest in the Ford F-150.

The Compressor, Two Post Lift, Four Post Lift, and Ford F-150 are in Algoe's actual or constructive possession.[218] Debtor testified that he has no intent to retain ownership in or seek possession of those four items.[219] Additionally, Debtors' Plan states: "Upon confirmation of this Plan, the Debtor(s) surrender the collateral and the automatic stay under 11 U.S.C. § 362(a) is terminated as to actions against any (i) collateral that is described in the preceding table . . . . The co-debtor stay under 11 U.S.C. § 1301(a) is terminated with respect to the collateral identified [in paragraph 7 of the Plan]."[220] That language evinces Debtors' clear intent to surrender the Two

---

[214] *Compare* June 10, 2021 Hearing at 10:39:33–10:46:30, *with* June 10, 2021 Hearing at 11:06:00–11:06:15, *and* June 10, 2021 Hearing at 11:50:59–11:51:40 (statements by Debtor, Lone Star Bank, and Randy Algoe, respectively, agreeing that all three items remain on the premises).
[215] June 10, 2021 Hearing at 11:51:37–11:52:40.
[216] *Id.* at 12:11:50–12:13:15.
[217] *Id.* at 10:54:26–10:54:50.
[218] *Id.* at 11:49:47–11:50:22.
[219] *Id.* at 10:51:46–10:51:55, 10:56:46–10:57:46.
[220] ECF No. 191 at 3, ¶ 7(A).

Post Lift, Four Post Lift, Compressor, and Ford F-150 to Algoe.  Lone Star likewise abandons any interest in those items.

Accordingly, the Court finds that Debtors have made the Jenny 80-Gal Air Compressor, a Rotary Two Post Lift, a Challenger 14K Four Post Lift and, a Ford F-150 truck,[221] available to Algoe.

Nevertheless, Algoe argues that the Two Post Lift, Four Post Lift, and Compressor are fixtures and therefore cannot be surrendered.  This Court disagrees.  "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."[222]  Texas law controls here.  Generally, fixtures belong to a lessor, but trade fixtures, a subset of fixtures, are an exception and belong to the debtor, unless a contractual provision in a lease provides otherwise.[223]  Because trade fixtures are a subset of fixtures, for an article to be deemed a trade fixture, it must first be a fixture generally.[224]

The Texas Supreme Court set forth three factors to consider in determining "whether personalty has become a fixture, that is, a permanent part of the realty to which it is affixed: (1) the mode and sufficiency of annexation; (2) the adaption of the article to the use or purpose of the realty; and (3) the intention of the party who annexed the chattel to the realty."[225]  In addition to the three-factor test, an article is a trade fixture if three additional elements are met: the article must be annexed in the context of the lease; the article must be annexed by the tenant to enable the

---

[221] June 10, 2021 Hearing at 10:54:26–10:54:47, 11:06:00–11:06:15.

[222] *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) (citing *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70 (1945)).

[223] *See, e.g.*, *In re San Angelo Pro Hockey Club, Inc*., 292 B.R. 118, 58 (Bankr. N.D. Tex. 2003) (holding that at the termination of the lease, the debtor retains an interest in all personal property to include property classified as trade fixtures); *Eun Bok Lee v. Ho Change Lee*, 411 S.W.3d 95, 110 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding a tenant generally may remove and take away trade fixtures at the end of the lease, unless there is a contractual term to the contrary).

[224] *Moskowitz v. Calloway*, 178 S.W.2d 878, 880 (Tex. Civ. App.—Texarkana 1944, writ ref'd w.o.m.).

[225] *Logan v. Mullis*, 686 S.W.2d 605, 607 (Tex. 1985).

tenant to carry on its business; and the article must be removable without material alteration or permanent injury to the freehold.[226]

An application of these principles is demonstrated in *Demay International*.  There, a creditor filed a motion to establish a mechanic's lien on electrical equipment it installed for debtor-tenant's business.[227]  The court found the electrical equipment was a trade fixture and belonged to the estate, therefore the lien was valid.[228]  The court reasoned the equipment was installed for the debtor's business and credible testimony indicated that removal of the equipment would occur with no damage to the property.[229]

Similar to the electrical equipment in *Demay International*, the lifts and Compressor were installed for Debtor's auto repair business.[230]  Also like the electrical equipment, the lifts and Compressor can be removed without materially damaging the Property as Debtor testified that the lifts were affixed to concrete by bolts and that the Compressor was bolted to a pallet and connected to the wall by air distribution pipes and electrical wiring.[231]  Debtor testified that the Compressor could not simply be picked up and carried away, but that it could be properly removed starting with the breakers.[232]  Algoe offered no evidence demonstrating that removal of those items would materially alter or cause permanent damage to the Property.  Moreover, no evidence was offered that the verbal lease between Debtor and Billy R. Algoe considered trade fixtures;[233] thus, the parties intended to employ the well-established definitions and concepts set out in the case law.[234]

---

[226] *In re San Angelo Pro Hockey Club, Inc*., 292 B.R. 118 (Bankr. N.D. Tex. 2003*); see also C.W. 100 Louis Henna, Ltd. v. El Chico Rests. of Texas, L.P*., 295 S.W.3d 748 (Tex. App.—Austin 2009, no pet.).
[227] *GSL of Ill, LLC v. McCaffety Elec. Co.* (*In re Demay Int'l, LLC*), 471 B.R. 510, 518–19 (S.D. Tex. 2012).
[228] *Id*. at 529.
[229] *Id*. at 528–29.
[230] *See In re Demay Int'l, LLC*, 471 B.R. at 528–29.
[231] June 10, 2021 Hearing at 10:54:08–10:55:28.
[232] *Id.* at 10:54:08–10:55:28.
[233] August 12, 2021 Hearing at 2:51:33–2:51:53.
[234] *See C.W. 100 Louis Henna*, 295 S.W.3d at 755.

Those definitions and concepts dictate that Debtors are the lawful owners of any trade fixtures they installed on the Property and are entitled to remove those fixtures. This Court finds that, the Two Post Lift, Four Post Lift, Compressor, and Ford F-150 are trade fixtures under Texas law and as Debtors' personalty can be surrendered and are available to Algoe. Therefore, Debtors have satisfied the requirements of surrender pursuant to § 1325(a)(5)(C) which will be fully effectuated upon confirmation of Debtors' Plan.

Accordingly, Algoe's objection to Debtors' Plan on the basis that business equipment was not surrendered to Algoe is overruled.

### ii. Treatment of Lone Star and Algoe's Claims under Debtors' Plan

Generally, a debtor does not need consent from a secured creditor to surrender collateral,[235] unless the debtor intends to surrender collateral *in full satisfaction* of the creditor's secured claim.[236] If the creditor objects to surrender of the collateral in full satisfaction of its claim, then the debtor must provide for any unsecured deficiency in the plan to satisfy § 1325(a)(5)(C).[237]

Debtors' Plan does not explicitly state that surrender of the collateral is in full satisfaction of the secured creditors' claims. However, paragraph 7 of the Plan states: "The rights of a secured creditor to a deficiency claim will be determined (i) in accordance with the creditor's allowed

---

[235] *In re Harris*, 244 B.R. 556, 557 (Bankr. D. Conn. 2000) ("No court has held that § 1325(a)(5)(C) requires consent of the secured creditor to be effectual, and a number of appellate courts, including the United States Supreme Court, have, albeit in passing, recognized this provision without indicating the consent of the secured creditor was a necessary component.") (citing *Assocs. Com. Corp.*, 520 U.S. at 962; *Williams v. Tower Loan of Mississippi, Inc.*, 168 F.3d 845, 847 (5th Cir. 1999)).

[236] *In re Sneijder*, 407 B.R. 46, 53 (Bankr. S.D.N.Y. 2009) (emphasis added) (citing *In re Toth*, 61 B.R. at 170 ("To meet the requirements of § 1325(a)(5)(C) and effect a permissible surrender of property, the debtor's Plan must provide for the unsecured portion of the secured creditor's claim."); *In re Stockwell*, 33 B.R. 303, 305 (Bankr. D. Or. 1983) ("Subsection (C) is clear. If the debtor surrenders his interest in the property securing the claim, the court can find that the requirements of § 1325(a)(5) have been met. The creditor may then foreclose his lien and file an unsecured claim for his actual or expected deficiency."); *In re Erwin*, 25 B.R. 363, 367 (Bankr. D. Minn. 1982) ("Consequently, if the disposition of this property results in a sale for an amount that is less than the claim, the debtor must provide for the unsecured portion in the plan and that has not been done here.").

[237] *In re Sneijder*, 407 B.R. at 53.

unsecured claim in any timely filed proof of claim; or (ii) by separate Court order."[238]  Lone Star timely filed its proof of claim in the amount of $59,690.62.[239]  Debtors did not object.  On August 15, 2020, Lone Star auctioned off the Repossessed Collateral.  Lone Star never filed an amended proof of claim seeking treatment of any deficiency as an unsecured claim.  Therefore, Lone Star did not comply with paragraph 7(D)(i) of Debtors' Plan.  Additionally, Lone Star was legally entitled to repossess and foreclose upon the Two Post Lift, Four Post Lift, Compressor, and Ford F-150, but instead opted to abandon its interest in those items.

Accordingly, this Court finds that Lone Star's claim is satisfied in full by Debtors' surrender of collateral in paragraph 7 of the Plan and is not entitled to any further distribution under the Plan.

Algoe likewise timely filed a proof of claim in the amount of $53,340.[240]  Pursuant to § 506, Algoe's Claim is secured "to the extent of the value of [Algoe's] interest in the estate's interest in such property."[241]  Debtors amended Schedule B values the Compressor at $5,500, the Four Post Lift at $14,000, and the Two Post Lift at $2,000.[242]  Debtor's uncontroverted testimony at the August 12, 2021 hearing was that the Ford F-150 is valued at $2,500.[243]  As of the date of filing,[244] those items are valued at a total of $24,000.  Unlike Lone Star, Algoe did not have the benefit of a foreclosure sale before confirmation to ascertain any deficiency.  Based on the values disclosed and testified to, Algoe's Claim will not be satisfied in full by Debtors' surrender of business equipment.

---

[238] ECF No. 191 at 3, ¶ 7.
[239] Claim No. 4-1.
[240] Claim No. 10-1.
[241] 11 U.S.C. § 506.
[242] ECF No. 227 at 9, ¶ 40.
[243] August 12, 2021 Hearing at 2:52:51–2:55:10.
[244] 11 U.S.C. § 506(a)(2) ("If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of filing of the petition without any deduction for costs of sale or marketing.").

Accordingly, Algoe is entitled to a deficiency claim of $29,340, to be treated as a general unsecured claim and paid pro-rata along with the other general unsecured creditors.[245]   Additionally, this Court orders Debtors to amend their Schedule B to clarify that the Ford F-150 surrendered to Algoe is valued at $2,500, in accordance with Debtor's uncontroverted testimony, and remove the sandblaster, which Debtor testified is wholly owned by his brother.[246]

### 4.  Confirmation of Debtors' July 23, 2021 Plan

To be confirmed, Debtors' Plan must satisfy the requirements of § 1325(a).  Neither the Trustee nor any holder of an allowed unsecured claim has objected to confirmation, thus, if Debtors' Plan satisfies the nine requirements of § 1325(a), then this Court must confirm the Plan.

#### a.  Section 1325(a)(1)

Section 1325(a)(1) requires that Debtors' Plan "complies with the provisions of [chapter 13] and with the other applicable provisions of [title 11]."  As detailed below, the Court finds that Debtors' Plan complies with all requirements of § 1325(a).  Additionally, there is no evidence that Debtors' Plan is out of compliance with any provision of the Bankruptcy Code.   Therefore, § 1325(a)(1) is satisfied.

#### b.  Section 1325(a)(2)

Section 1325(a)(2) requires that "any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid."  28 U.S.C. § 1309 requires that a chapter 13 debtor pay the clerk of the court a filing fee.  The docket reflects that U.S. Treasury received $310 for Debtors' filing fee, plus administrative costs, on February 27, 2020.  Debtors' Plan provides that beginning on March 1, 2020, Debtors were to remit monthly payments to

---

[245] *See* 11 U.S.C. § 506(a).
[246] August 12, 2021 Hearing at 2:48:08–2:51:35.

the Trustee.[247]  Debtor's uncontroverted testimony was that Debtors are current on their monthly payments to Trustee, and in fact, as of the August 12, 2021 hearing, ahead on payments by $600.[248] This Court finds § 1325(a)(2) is satisfied.

### c.  Section 1325(a)(3)

Section 1325(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law."  Algoe complains that Debtors' Plan "fraudulently states that the business equipment of the Estate of Billy Algoe was surrendered."[249]  This objection challenges Debtors' good faith in proposing their Plan.

Courts in the Fifth Circuit use a "totality of the circumstances" test to determine whether a chapter 13 plan satisfies this good faith requirement.[250]  There are seven factors courts commonly examine when determining good faith.[251]  These factors are: (1) the reasonableness of the proposed repayment plan; (2) whether the plan shows an attempt to abuse the spirit of the Bankruptcy Code; (3) whether the debtor genuinely intends to effectuate the plan; (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities; (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay; (6) whether the plan reflects the debtor's ability to pay; and (7) whether a creditor has objected to the plan.[252]  Furthermore, this Court has held that debtors will not be considered to be acting in bad faith merely for doing what the Code permits them to do.[253]

---

247 ECF No. 243 at 1–2, ¶ 4.
248 August 12, 2021 Hearing at 2:44:50–2:47:59.
249 ECF No. 250 at 1, ¶ 2.
250 *In re Crager*, 691 F.3d 671, 675 (5th Cir. 2012).
251 *In re Ezzell*, 438 B.R. 108, 117 (Bankr. S.D. Tex. 2010).
252 *Id.*
253 *In re Garza*, 575 B.R. 736, 731 (Bankr. S.D. Tex. 2017).

First, Debtors' proposed repayment plan is reasonable.  Debtors utilize § 1325(a)(5)(C) to surrender collateral to secured creditors and provision for repayment of unsecured creditors at 2% pro-rata, despite having no non-exempt assets, as discussed in more detail below.  Second, "[t]he underpinning of the spirit of the Bankruptcy Code is forgiveness of the honest but unfortunate debtor," but this opportunity for forgiveness is not extended to the debtor who "has been recalcitrant during the case, or has overutilized the privilege."[254]  Debtors have shown no signs of recalcitrance during the case.  Debtors' Plan calls for surrender of certain portions of the Debtors' non-exempt property to Lone Star in accordance with § 1325(a)(5)(C), and Debtors have made the remainder of that property available to Algoe.[255]  Debtors are merely doing what the Code permits them to do in surrendering non-exempt assets to secured creditors.  Third, Debtors' actions also serve as evidence of good faith relating to the third factor, as it cannot be argued that Debtors do not intend to effectuate the Plan when the surrender of the business equipment has been completed, excepting formal surrender upon entry of an order confirming Debtors' Plan.  Fourth, there is no evidence of misrepresentation, unfair manipulation, or other inequities.  Fifth, as found above, Lone Star lawfully seized the Repossessed Collateral and auctioned it pursuant to this Court's Agreed Order.  Therefore, Debtors' surrender of the Repossessed Collateral to Lone Star was not "fraud with an intent not to pay."  To the contrary, Debtors acted in accordance with the Agreed Order by surrendering that collateral directly to Lone Star.  Debtors have made the remainder of the business equipment available to Algoe and will treat the remainder of Algoe's Claim as unsecured, to be paid pro-rata with the other unsecured claims.  Sixth, Debtors' Plan reflects their

---

[254] *Lowe v. Antelope Techs. Inc. (In re Antelope Techs. Inc.)*, 2008 U.S. Dist. LEXIS 62364, at *24 (S.D. Tex. Aug. 11, 2008).
[255] Randy Algoe testified that the items in question remain on the premises. June 10, 2021 Hearing at 11:51:00–11:51:40. Debtor testified that he does not wish to recover possession of the remaining items. *Id.* at 10:56:46–10:57:46.

ability to pay.  Both Debtors are employed[256] and Debtor testified that Debtors have regular, reliable income.[257]  Together, Debtors' combined monthly income is $4,113.85.[258]  Debtors' expenses are modest, with food and housekeeping supplies for two people being their largest expense at $600 per month.[259]  Debtors' second largest expense is transportation in the amount of $300.[260]  Debtors' monthly net income is $1,650,[261] all of which will be paid under the Plan from September 2020 to February 2025.[262]  Seventh, only Algoe, a secured creditor, has objected to Debtors' Plan, but as found above, its' objection to Debtors' surrender of collateral under § 1325(a)(5)(C) is overruled.  Thus, analysis of the totality of the Debtors' circumstances demonstrates that the Plan was not proposed in bad faith.  On the contrary, this Court finds that the July 23, 2021 Plan was proposed in good faith and not by any means forbidden by law pursuant to § 1325(a)(3).

Accordingly, Algoe's objection that the July 23, 2021 Plan was filed in bad faith is overruled.

### d.  Section 1325(a)(4)

Section 1325(a)(4) requires that "the value . . . of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title . . . ."  In other words, the question before the court is whether the proposed Plan meet the best interests or liquidation test set out in 11 U.S.C. § 1325(a)(4).  Debtors' Amended Schedule C reflects that Debtors opted for federal exemptions.[263]  Debtors exempted only $28,347.13 of their homestead out of an allotted

---

[256] ECF No. 179 at 1, ¶ 1.
[257] August 12, 2021 Hearing at 2:44:50–2:47:59.
[258] ECF No. 179 at 2, ¶ 12.
[259] *Id.* at 5, ¶ 7.
[260] *Id.* at 5, ¶ 12.
[261] *Id.* at 6, ¶ 23c.
[262] ECF No. 243 at 2, ¶ 4.
[263] ECF No. 227 at 10, ¶ 1.

$50,300 under § 522(d)(1).[264]  That left Debtors with $21,952.87 to use pursuant to § 522(d)(5).

Debtors also opted to use the wildcard exemption under § 522(d)(5) and exempted $4,275 in other

property using the leftover from their homestead exemption and the wildcard.[265]  Debtors' excess

unused exemption amount totaled $20,327.87.[266]  Therefore, Debtors had $0 in non-exempt assets,

which would require Debtors to pay 0% to unsecured creditors, however, Debtors' Plan provisions

for a 2% dividend to their general unsecured creditor class.[267]  Section 1325(a)(4) is satisfied.

### e.  Section 1325(a)(5)

Section 1325(a)(5) requires: (1) the secured creditor accepts the plan;[268] (2) the debtor uti-

lizes the "cram down" power;[269] or (3) the debtor surrenders to the creditor the property securing

the claim.[270]  As discussed at length above, Debtors elect option three and this Court found that

Debtors made the surrendered collateral available to Lone Star and Algoe.  Debtor also testified

that Debtors are opting to surrender collateral to Lone Star and Algoe, and that Debtors are not in

possession of any other machinery, fixtures, or equipment that is not listed in Debtors' sched-

ules.[271]

Accordingly, Debtors have satisfied § 1325(a)(5).

### f.  Section 1325(a)(6)

Section 1325(a)(6) requires that "the debtor will be able to make all payments under the

plan and to comply with the plan."  Feasibility is determined on a case-by-case basis and not ac-

cording to any per se rules.[272]  A debtor's ability to make all payments under the plan must be

---

[264] *Id.* ¶ 2.
[265] *Id.* at 11–12, ¶ 2.
[266] *Id.* at 15.
[267] ECF No. 243at 18, ¶ 10.
[268] 11 U.S.C. § 1325(a)(5)(A).
[269] *Id.* § 1325(a)(5)(B).
[270] *Id*. § 1325(a)(5)(C).
[271] August 12, 2021 Hearing at 2:45:50–2:47:59, 2:48:08–2:51:35.
[272] COLLIER ¶ 1325.07[1].

viewed in light of the debtor's obligation to support her dependents.[273]  Here, Debtors have jointly

filed for bankruptcy and have no dependents.[274]  Both Debtors are gainfully employed[275] and are

able to pay their monthly expenses with $1,650 leftover.[276]  Debtors' monthly payments under the

Plan from September 2020 to February 2025 are $1,650, which includes Debtors' Plan reflects that

Debtors' payments thereunder commenced in March 2020[277] and Debtor testified that Debtors are

current on their monthly payments.[278]  Thus, Debtors have already satisfied seventeen months of

plan payments.  Debtors have also already satisfied their duty to make the collateral they intend to

surrender available to their secured creditors, as discussed above.  Therefore, Debtors have demon-

strated that they are able to make payments under the Plan and to comply with its provisions.  There

is no evidence that Debtors' payments and compliance will not continue.

Accordingly, § 1325(a)(6) is satisfied.

### g.  Section 1325(a)(7)

Section 1325(a)(7) requires that "the action the debtor in filing the petition was in good

faith." Case law on good faith under § 1325(a)(7) is sparse.  As explained in *Powers*, some courts

apply either the multifactor test employed under § 1325(a)(3) or multifactor tests emulating the

§ 1307(c) analysis.[279]  The *Powers* court, however, "does not favor the application of either the

§ 1325(a)(3) or § 1307(c) tests for the reason that these are three independent statutory provisions,

and each section serves a separate and distinct purpose."[280]  The court continued:

> Section 1325(a)(3) tests the reasonableness of the plan and the sincerity of the
> debtor with respect to that particular plan; § 1325(a)(7) tests whether the filing is

---

[273] *Id*. (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 124 (1977)).

[274] ECF No. 179 at 4, ¶ 2.

[275] August 12, 2021 Hearing at 2:45:50–2:47:59.

[276] ECF No. 179 at 6, ¶ 23a–c.

[277] ECF No. 243 at 1–2, ¶ 4.

[278] August 12, 2021 Hearing at 2:45:50–2:47:59.

[279] 554 B.R. 41, 58 (Bankr. N.D.N.Y. 2016).

[280] *Id.* at 59.

fundamentally fair and in a manner that complies with the spirit of the Code; and § 1307(c) seeks, *inter alia*, to prevent dishonest, ill-motivated, bad faith debtors from invoking the protections of bankruptcy altogether. By its very terms, § 1325(a)(7) contemplates only whether the "action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7). Because Congress purposefully added § 1325(a)(7) to the Code in 2005, in this Court's view, § 1325(a)(7) must serve a purpose different from either § 1325(a)(3) or § 1307(c).[281]

This Court agrees.  In determining whether § 1325(a)(7) is satisfied, this Court asks "whether the debtor filed the petition for a greedy and unworthy purpose as opposed to a rehabilitative purpose."[282]

Following the *Powers* court's lead, this Court considers several factors: "the motivation of the debtor and his or her sincerity in seeking Chapter 13 relief, the debtor's degree of effort, the frequency with which the debtor has sought relief under the Code, and the circumstances under which the debtor has contracted his or her debts and has demonstrated good faith in dealing with creditors."[283]  Here, Debtor testified that this is the first time Debtors have filed for bankruptcy[284] and Debtors' petition reflects that they have not filed for bankruptcy within the preceding eight years.[285]  Debtors' secured debt and at least some of their unsecured debt stems from the operation of Debtor's now defunct auto repair business.[286]  Debtors' other debts stem from charge accounts, cars, and a home.[287]  Debtors' home is valued at $100,861.  Debtors also have two vehicles, a 2016 Ford Edge and a 2006 Nissan Sentra belonging to Debtors' son.[288]  Nothing about the types of debt or amount thereof indicates that Debtors spend lavishly.  Debtors are also of modest income, making just below the median income for a household of two in Texas.[289]  This is not a situation where

---

[281] *Id.* (citing *Henderson v. Wade (In re Wade)*, 2016 Bankr. LEXIS 739, at *12-13 (Bankr. N.D. Ga. Mar. 4, 2016)).
[282] *Id.* (citing *In re Furlong*, 426 B.R. 303, 310 (Bankr. C.D. Ill. 2010)).
[283] *Id.*
[284] August 12, 2021 Hearing at 2:45:50–2:47:59.
[285] ECF No. 1 at 3, ¶ 9.
[286] ECF No. 190 at 1–5.
[287] ECF Nos. 1 at 27–30, 191 at 1–5.
[288] ECF No. 227.
[289] *Compare* ECF No. 5 at 3, ¶ 15b (Debtors' yearly combined income is $61,923.24) *with* ECF No. 5 at 3, ¶ 16c

Debtors are affluent and attempting to receive an unfair advantage by abusing the bankruptcy system.[290]

Moreover, Debtors have exhibited a willingness to work with their creditors, evidenced by entering in the Agreed Order resolving Lone Star's Motion for Relief and surrendering collateral to other secured creditors, including Algoe.  Debtors also propose to cure their home mortgage arrearages, make payments on their vehicle through the Trustee, and provide unsecured creditors a 2% dividend despite qualifying for a 0% dividend as discussed above.

Accordingly, Debtors' petition was filed in good faith. Section 1325(a)(7) is satisfied.

### h.   Section 1325(a)(8)

Section 1325(a)(8) relates to domestic support obligations, which Debtor testified that neither Debtor owes or pays and thus, is satisfied.

### i.   Section 1325(a)(9)

Section 1325(a)(9) requires that "the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308."  Section 1308 requires Debtors to file all tax returns "for all taxable periods ending during the 4-year period ending on the date of the filing of the petition." Debtors filed tax documents for years 2017 and 2018 on the docket.[291]  The IRS's proof of claim does not indicate that Debtors have missing tax returns.[292]  Additionally, Debtor testified that Debtors have filed tax returns for four years preceding the filing of their petition and all tax returns due since.[293]  There is no evidence in the record to the contrary.  Debtors have satisfied § 1325(a)(9).

---

(Median yearly family income for Texas household consisting of two people is $65,708.)

[290] *Cf. In re Davis*, 2011 Bankr. LEXIS 1323, at *1, *39, *43 (Bankr. E.D. Tex. Mar. 31, 2011) (finding that the debtor abused the bankruptcy process and noting that the debtor was an affluent, single woman, with stable income making six figures with no dependents, suffering no calamity such as illness or job loss, and obviously having the ability to repay her debts).

[291] ECF Nos. 8, 9.

[292] Claim No. 1-2.

[293] August 12, 2021 Hearing at 2:44:50–2:47:59.

Accordingly, pursuant to 11 U.S.C. § 1325, the "Chapter 13 Uniform Plan and Motion for Valuation of Collateral" dated July 23, 2021[294] filed by Luis Daniel Gutierrez and Viola S. Gutierrez's is confirmed.

### V. CONCLUSION

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED October 8, 2021

Eduardo Rodriguez
United States Bankruptcy Judge

---

[294] ECF No. 243.